NOT FOR PUBLICATION                                                                    (Doc. No. 19)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| NICHOLAS P. WORRALL | : |
| Plaintiff, | : Civil No. 11-3750 (RBK/JS) |
| v. | : **OPINION** |
| GARY VELORIC, et al. | : |
| Defendants. | : |

      This case arises out of injuries allegedly caused by the negligence of security officers at a nightclub. Presently before the Court is a motion by Defendant Gary Veloric to dismiss Plaintiff Nicholas P. Worrall's January 31, 2012 Complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court will grant Defendant's Motion to Dismiss with respect to Plaintiff's claims of vicarious liability for negligently caused injury and deliberate assault. The Court will deny Defendant's Motion to Dismiss with respect to Plaintiff's claims of negligent hiring, supervision, and training.

## I. BACKGROUND

      Plaintiff Nicholas P. Worrall is a resident of New York, and claims to have been a "business invitee" of Dusk Night Club in Atlantic City on September 5, 2010. (Pl.'s Am. Compl., ¶ 2). AC Nightlife, LLC operates as Dusk Night Club. AC Nightlife, LLC is a New

Jersey Limited Liability Corporation owned by Red Stripe Plane Group, LLC and AMAD, Inc. (Id. ¶ 6; Def.'s Br. in Supp. of Mot. to Dismiss, 3).

At the heart of Defendant's argument in support of a Rule 12(b)(6) Motion to Dismiss is Defendant Veloric's disputed involvement with Dusk Night Club. Plaintiff alleges that Defendant Gary Veloric is the "owner, operator, and/or investor of AC Nightlife, LLC and Red Stripe Plane Group [sic] and was responsible for the security and management of Dusk Night Club located in Caesars Palace . . . ." (Pl.'s Am. Compl., ¶ 8). Defendant Veloric claims that he is the sole shareholder of Red Stripe Plane Group, LLC, a limited liability corporation in New Jersey, and has no "direct ownership of AC Nightlife, and subsequently Dusk Night Club, nor does he operate, manage, or supervise the night club in any form." (Def.'s Br. in Supp. of Mot. to Dismiss, 3).

In Plaintiff's Amended Complaint, Plaintiff alleges that Defendant negligently hired security personnel[1] at Dusk Night Club in Atlantic City. (Pl.'s Am. Compl., ¶ 28). These security personnel allegedly, "without provocation or any justification or reasonable basis . . . physically assaulted" Plaintiff. (Id.) As a result, Plaintiff sustained injuries requiring hospitalization and causing Plaintiff to miss his "usual activities." (Id.)

Plaintiff also alleges that Defendant Veloric is "vicariously responsible by and through the conduct of [his] employees, agents and representatives" for Plaintiff's injuries. (Pl.'s Am. Compl., ¶ 12). This includes one count of "negligently caused injury" and one count of deliberate assault. (Pl.'s Am. Compl., ¶¶ 30, 32). Defendant Veloric disputes Plaintiff's allegations.

---

[1] The security personnel at Dusk Night Club were Defendants Donald Scott Brummett; John Does IV, V, and VI; and fictitious entities ABC Corp. and XYZ Corp.

**II. STANDARD FOR MOTION TO DISMISS**

A complaint or portions of a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993); Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two-part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). First, the court must separate factual allegations from legal conclusions. Id. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim of relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

Generally, in a motion to dismiss, courts consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990)). However, courts may also consider "all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment." Aspdin v. Foggia,

2011 WL 4859910 (D.N.J. 2011) (finding that a Certification that was not relied on in the Complaint was "wholly inappropriate for consideration on a motion to dismiss"). The Third Circuit has held "that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar, 998 F.2d at 1196.

### III. PROCEDURAL POSTURE

#### A. Documents Outside the Motion to Dismiss

Before discussing the merits of Defendant's Motion to Dismiss, the Court first considers which documents it may properly consider in deciding the motion. Defendant argues that the Complaint against Defendant Veloric must be dismissed because Veloric is not an owner, operator, manager, or supervisor of Dusk Night Club. (Def.'s Br. in Supp. of Mot. to Dismiss, 3). Defendant argues that Plaintiff's Complaint must be dismissed because Defendant does not have any relationship with Dusk Night Club outside his membership in a limited liability corporation that co-owns Dusk Night Club. Per Defendant's argument, his connection to the alleged assault is limited to his sole membership in Red Stripe Plane Group, LLC, one of the two corporations that comprise AC Nightlife, LLC, also known as Dusk Night Club. Id. Defendant claims that he is not liable for "the management or operation of Dusk Night Club" because he "is simply a member of a limited liability company . . . and should not be deprived of the protections of the corporate structures which he is entitled to." Id. at 4.

To support this argument, Defendant has provided the Affidavit of James Wankmiller on behalf of Gary Veloric, as well as the Certification of Frank J. Kontely III. Frank J. Kontely III is an attorney for Defendant Veloric. James Wankmiller is Executive Vice President and General Counsel for AC Nightlife. (Certification of Frank J. Kontely III, ¶ 4). The Certification affirms

4

that the Affidavit of James Wankmiller states that Veloric was not the owner or operator of Dusk Nigh Club and was not involved in the security or management of the establishment. Id. Wankmiller's affidavit certifies that Gary Veloric is not in direct ownership of, nor does he hold a supervisory position at, Dusk Night Club. (Aff. of James Wankmiller, ¶¶ 5-7). This document is submitted "in support of Gary Veloric's Motion to Dismiss Plaintiff's Complaint." (Aff. of James Wankmiller, ¶ 8).

Neither document that Defendant has provided in support of Defendant's Motion to Dismiss can be considered in deciding Defendant's motion. Plaintiff's Complaint did not explicitly rely on either the Certification of Frank J. Kontely or the Affidavit of Wankmiller. Neither were the documents integral to Plaintiff's original claim, as Plaintiff would not have had access to these documents at the time of filing.

### C. Conversion to Summary Judgment

Where a party submits a motion to dismiss that relies upon matters outside the pleadings, the Court may treat that motion as one for summary judgment as long as both parties (1) have notice that the motion could be treated as one for summary judgment, and (2) have been given a reasonable opportunity to present relevant materials. Fed.R.Civ.P. 12(c); see Carver v. Plyer, 115 F. App'x 532, 536-37 (3d Cir. 2004). In the absence of notice of conversion to summary judgment or a reasonable opportunity to respond, however, "the district court may only consider the complaint and limited categories of documents in order to protect plaintiffs against, in effect, summary judgment by ambush." Jones v. Morris Cnty Correctional Facility, 2007 WL 1118342, at *2 (D.N.J. 2007) (citing In re Bayside Prison Litig., 190 F.Supp.2d 755, 760 (D.N.J. 2002)) (internal quotation marks omitted).  Further, the Third Circuit has rejected the idea that a party has constructive notice of conversion to summary judgment because the party has already

submitted material outside the pleadings. In re Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280, 288 (3d Cir. 1999).

Here, the Court is electing not to convert Defendant's Motion to Dismiss to a motion for summary judgment because the parties did not have express notice of the possibility of conversion. Additionally, neither side has requested summary judgment, and therefore neither side could have had an opportunity to respond to a motion for summary judgment.

## IV. DISCUSSION OF MOTION TO DISMISS

As discussed in Part I of this Opinion, supra, Defendant argues that Gary Veloric is legally shielded from all liability because he is neither the owner nor the manager of Dusk Night Club. (Def.'s Br. in Supp. of Mot. to Dismiss, 3). Although the Court cannot consider documents supporting Defendant's motion at this time, the Court must still determine whether Plaintiff's January 31, 2012 Amended Complaint survives Defendant's Motion to Dismiss on its face.

### A. Plaintiff's Claim of Negligent Hiring, Training, and Supervision of Employees

#### 1. Negligent Hiring

The New Jersey Supreme Court has recognized that a negligent hiring claim differs from a claim based on the theory of respondeat superior. DiCosala v. Kay, 450 A.2d 508 (N.J. 1982). Negligent hiring is based on the theory that employers should be accountable for exposing the public to potentially dangerous individuals, while respondeat superior centers on the theory that an employee's actions are done on behalf of the employer. Id. at 515. Negligent hiring claims can arise when an employee commits an intentional tort against a customer. Id. A claim of negligent hiring must demonstrate (1) that the employer knew or had reason to know of qualities in the employee that created a risk of harm to other persons and (2) that through the negligence

of the employer in hiring the employee, the employee proximately caused the injury. Di Cosala, 450 A.3d at 516.

Plaintiff's Complaint alleges that Veloric, among other Defendants, "negligently hired" Defendant Brummet et al. at Dusk Night Club as part of his supervisory responsibilities. (Pl.'s Am. Compl., ¶¶ 9, 27). These security personnel (Defendant Brummet and others) allegedly assaulted Veloric. (Id., ¶ 27). Accordingly, Plaintiff's claim for negligent hiring is sufficiently plausible to sustain the Complaint.

### 2. Negligent Training

Similarly, the elements of negligent training are that (1) Defendant owed a duty to Plaintiff to properly train its employees; (2) Defendant breached that duty; (3) Defendant's failure to train its employees properly proximately caused Plaintiff's injury; and (4) Defendant's breach caused actual damages to Plaintiff. Stroby v. Egg Harbor Twp., 754 F. Supp. 2d 716 (D.N.J. 2010).

Plaintiff alleges that Veloric, along with other Defendants, "negligently failed to train . . . said employees." (Pl.'s Am. Compl., ¶ 27). Plaintiff explicitly states that as a result of Defendant's negligent training, Plaintiff "sustained severe and permanent injuries necessitating hospital and medical treatment . . . ." Id., ¶ 28). This allegation that Defendant Veloric breached his duty to adequately train security officers is sufficiently plausible to survive Defendant's Motion to Dismiss.

### 3. Negligent Supervision

Negligent supervision, like negligent hiring and training, also covers acts committed outside of the scope of employment. Dixon v. CEC Entm't, Inc., 2008 WL 2986422, at *16 (N.J.

Super. Ct. App. Div. August 2008) (per curiam). Employers have a duty to supervise employees, and liability may be imposed if an employer fails to perform that duty. Id. To sustain a claim of negligent supervision, a plaintiff must allege all the requirements for a negligence action in tort.

Plaintiff alleges that Veloric, along with other Defendants, "negligently failed to . . . adequately supervise said employees." (Pl.'s Am. Compl., ¶ 27). Plaintiff explicitly states that as a result of Defendant's negligent supervision, Plaintiff "sustained severe and permanent injuries necessitating hospital and medical treatment . . . " (Id., ¶ 28). This allegation of direct liability on the part of Defendant Veloric is sufficiently plausible to survive Defendant's Motion to Dismiss.

### B. Plaintiff's Claim of Vicarious Liability for Negligently Caused Injury and for Deliberate Assault

Plaintiff's Complaint alleges that Defendant Veloric "was the owner, operator and/or investor of AC Nightlife, LLC and Red Stripe Plane Group, LLC and was responsible for the security and management of Dusk Night Club . . . . " (Pl.'s Am. Compl., ¶ 8). Plaintiff also claims that Veloric, Red Stripe Plane Group, LLC and AC Nightlife, LLC., along with Defendant Caesars Palace, retained the defendants who allegedly assaulted Plaintiff, and further that Veloric and Caesar's Palace were "responsible for providing a safe premises for business invitees . . . " (Id., ¶ 9-10). Plaintiff specifically alleges that Veloric is vicariously responsible for Plaintiff's injuries "by and through the conduct of [his] employees, agents and representatives, the security personnel who had been retained and were responsible for security . . . on September 5, 2010." (Id., ¶ 12).

Defendants argue that Gary Veloric is insulated from liability because Red Stripe Plane Group, LLC is a limited liability corporation, as is AC Nightlife, LLC the corporation d/b/a Dusk Night Club. (Def.'s Br. in Supp. of Mot. to Dismiss at 3). Defendants also maintain that Veloric is not an owner, operator or manager of Dusk Night Club. Plaintiff does not dispute, and indeed

8

alleges, that Veloric is part of a limited liability structure. (Pl.'s Am. Compl., ¶ 8). The Court finds that as a threshold matter, the corporate structure of AC Nightlife, LLC shields Defendant from vicarious liability even though Defendant is the sole owner of Red Stripe Plane Group, one of the corporations that owns AC Nightlife, LLC. As a result, Defendant cannot be held vicariously liable for the alleged negligent or intentional assaults of Dusk Night Club employees. Accordingly, these claims must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's claims against Gary Veloric for vicarious liability for negligently caused injury and for deliberate assault is **GRANTED**. Defendant's Motion to Dismiss Plaintiff's claims of negligent hiring, supervision, and training is **DENIED**. An accompanying order shall issue today.


Dated:   8/06/2012                                                                   /s/ Robert B. Kugler           _
                                                                                        ROBERT B. KUGLER
                                                                                        United States District Judge