NOT FOR PUBLICATION                                                          (Doc. No. 76)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| NICHOLAS P. WORRALL, | : |
| Plaintiff, | :  Civil No. 11-3750 (RBK/JS) |
| v. | :  **OPINION** |
| CITY OF ATLANTIC CITY, et al., | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the motion of Caesars a/k/a Caesars Entertainment ("Caesars"), Dusk Night Club ("Dusk"), Gary Veloric, AC Nightlife, LLC, and Red Stripe Plane Group (collectively "Defendants") for summary judgment on the claims asserted against them in the Amended Complaint of Nicholas P. Worrall ("Plaintiff"). For the reasons expressed herein, Defendants' motion will be **GRANTED IN PART**.

I.    BACKGROUND

This matter arises out of events that took place at a nightclub in Atlantic City, New Jersey in the early morning hours of September 5, 2010. Defendants' Statement of Undisputed Material Facts ("SUMF") ¶ 1. On that date, Plaintiff alleges that he was assaulted both inside the Dusk Night Club and afterward by police. Id. Plaintiff alleges that he was first attacked by Donald Scott Brummett, a security guard at Dusk, who is also referred to at times in the record as a "bouncer." Id. After leaving the club, Plaintiff indicates that he was approached by Atlantic

City police officers including Officer Sterling Wheaten, who he alleges further assaulted and beat him without justification.  Am. Compl ¶ 2.[1]

Based on these alleged events, Plaintiff filed suit on June 30, 2011.  In the Amended Complaint, Plaintiff asserted a number of claims against Atlantic City, its police department, and Officer Wheaton.  In Count V of the Amended Complaint, Plaintiff asserts a negligence claim against the moving defendants for alleged negligent hiring, and negligent failure to train or supervise employees.  In Counts VI and VII, he asserts assault and negligence claims against Brummett, and also seeks to hold the moving defendants vicariously liable for Brummett's actions.

The relationship between the moving defendants is as follows.  AC Nightlife, LLC operates under the trade name of Dusk, and operates a nightclub in Caesar's Atlantic City Hotel in New Jersey.  SUMF ¶¶ 4-5.  Red Stripe Plane Group is an affiliate of AC Nightlife, LLC, and Gary Veloric is the principal equity owner of Red Stripe Plane Group and AC Nightlife, LLC.  SUMF ¶¶ 6-7.  Each of these defendants has now moved for summary judgment on all of Plaintiff's claims against them.

## II.   LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the

---

[1] Further detail as to Plaintiff's allegations against the police defendants may be found in the Court's Opinion on Atlantic City's motion for summary judgment. See Opinion, Aug. 20, 2013, at 2-3 (ECF Doc. No. 66).

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact.  Anderson, 477 U.S. at 248.  Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor.  Id. at 255; Matsushida, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment.  Anderson, 477 U.S. at 256.  The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor.  Id. at 257.  The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**III. DISCUSSION**

    **A. Negligent Hiring**

The New Jersey Supreme Court has recognized that a negligent hiring claim differs from a claim based on the theory of respondeat superior.  DiCosala v. Kay, 91 N.J. 159, 168-70 (1982).  The tort of negligent hiring is based on the theory that employers should be accountable for their own negligence in exposing the public to potentially dangerous individuals, while respondeat superior liability requires no negligence on the part of an employer, but rather is based on the theory that an employee's actions are done on behalf of the employer.  Id. at 169-70.  Thus, while liability in respondeat superior claims is limited to actions taken by employees in the

scope of their employment, negligent hiring claims can arise even for actions that are outside of the scope of employment, where an employer "knew or should have known that the employee was violent or aggressive, or that the employee might engage in injurious conduct toward third persons." Id. at 173.

To support a claim for negligent hiring, it must be shown "whether the risk of harm from the dangerous employee to a person such as the plaintiff was reasonably foreseeable as a result of the employment." Id. at 174.  To prove this, a plaintiff must satisfy two fundamental requirements.  First, it must be shown that the employer had actual or constructive notice of dangerous attributes of an employee and "could reasonably have foreseen that such qualities created a risk of harm to other persons." Id. at 173.  Second, a plaintiff must show that "through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury." Id. at 174.  In determining what an employer should have known, it is settled doctrine that "[f]oresight, not hindsight, is the standard by which one's duty of care is to be judged." Johnson v. Usdin Louis Co., 248 N.J. Super. 525, 529 (App. Div. 1991) (quoting Hill v. Yaskin, 75 N.J. 139, 144 (1977)).

The Court finds that neither requirement has been met in this case.  There is no evidence in the record that suggests that Defendant had or should have had notice of unfitness, incompetence or dangerous attributes with respect to Brummett.  An undated "Employee Evaluation" of Brummett indicates that the supervisor who completed it believed that Brummett "shows great leadership skills and the perfect mentality for this line of work," and that he was "one of the best employee's [sic] we have." Def. Mot. Summ. J. Ex. F.  The record also indicates that Dusk ran a background check on Brummett at the beginning of his employment. Id. Ex. E.

The only evidence Plaintiff points to in support of his argument that Brummett's employers had actual or constructive notice of dangerous attributes is Brummett's testimony at his deposition that he suffered from Posttraumatic Stress Disorder ("PTSD") as a consequence of previous military service.  Brummett Dep. 22-23, Pl. Opp'n Ex. 1.  Plaintiff has also submitted a report from Dr. Matthew J. Friedman, indicating that "[t]here is growing evidence, especially among military veterans, that PTSD . . . predicts aggressive behavior and violence among veteran cohorts following deployment to Vietnam, Iraq and Afghanistan."  Friedman Letter, Jan. 8, 2013, Pl. Opp'n Ex. 2.  Dr. Friedman did not examine Brummett, and none of his findings are particularized whatsoever with respect to Brummett.  Id.  However, Plaintiff argues that if Dusk had contacted the Borgata Casino, Brummett's prior employer, and requested his employment file, it would have shown that the file included a letter indicating that Brummett was scheduled in 2010 to "be evaluated for any service connected disabilities at a Veterans Administration medical facility for a period of six weeks starting in January."  VA Letter, Jan. 6, 2010, Pl. Opp'n Ex. 3.  The letter does not indicate that the evaluation would be related to PTSD, nor has Plaintiff submitted any evidence in connection with this motion indicating that Brummett actually was evaluated by the VA in January 2010, or that such evaluation was related to PTSD.[2]

Plaintiff's argument falls short of creating an issue of material fact for trial.  First, he has cited no law that requires a hiring employer to obtain employment files from past employers.  Second, even if Dusk had obtained the file from Borgata, the letter in Brummett's file indicates nothing that would cause a reasonable employer to believe that Brummett had any dangerous attributes.  Third, even if the letter had referred specifically to PTSD, Plaintiff has not established

---

[2] Plaintiff did move to compel production of Brummett's VA records so that he could examine any medical and mental health records regarding Brummett's PTSD.  Pursuant to a Memorandum Opinion and Order dated July 17, 2013, Magistrate Judge Schneider denied Plaintiff's motion, and this Court subsequently denied an appeal of Judge Schneider's decision.  See ECF Doc. Nos. 61, 80.

that this would even constitute actual or constructive notice of a dangerous attribute.  Plaintiff's own letter from Dr. Friedman explains that "not . . . all individuals with PTSD express such aggressive behavior but rather . . . this is a recognized symptom of PTSD which is understood as one possible manifestation of the disorder."  Friedman Letter, Jan. 8, 2013.  Thus, Defendants had no actual or constructive notice of any incompetence or dangerous attributes of Brummett, and the first requirement for a negligent hiring claim is not met.  See DiCosala, 91 N.J. at 173.  Because Plaintiff has uncovered no evidence through discovery showing a genuine dispute of material fact as to whether Defendant was negligent in hiring Brummett, summary judgment must be granted as to this claim.

### B. Negligent Supervision

Like the tort of negligent hiring, negligent supervision is separate from the theory of respondeat superior, because it requires negligence on the part of the employer and extends to acts committed outside of the scope of employment.  Dixon v. CEC Entm't, Inc., 2008 WL 2986422, at *18 (N.J. Super. Ct. App. Div. Aug. 6, 2008) (citing Hoag v. Brown, 397 N.J. Super. 34, 54 (App. Div. 2007)).  Employers have a duty to supervise employees, and liability may be imposed if an employer fails to perform that duty.  Id.  An employer is only liable for negligent supervision, however, if all of the requirements of a tort action in negligence exist, which are duty, breach of duty, causation and injury.  Id.  To sustain his claim of negligent supervision, Plaintiff must show a dispute of material fact concerning whether Defendants should have reasonably foreseen that Brummett would intentionally or negligently injure a customer during the performance of his duties, and that such injury could have been prevented through proper supervision.

The Court finds that there is insufficient evidence to support a negligent supervision claim. To determine whether Defendants reasonably could have foreseen the alleged conduct, the personal and professional histories of Defendants' employees are the only evidentiary factor on the record to be examined. Here, Plaintiff's attorney deposed Brummett and sought to uncover dangerous predispositions that could make the alleged events foreseeable to Defendants. Having found no evidence, Plaintiff simply asserts the existence of a cause of action for negligent supervision and the legal conclusion that Defendants "failed to adequately instruct and supervise Brummett as to his duties and responsibilities as a bouncer during his employment at Dusk." Pl. Opp'n at 6. Without evidence in the record to support this conclusion, Plaintiff has failed to create a triable issue of material fact as to whether any defendant negligently supervised Brummett. Further, he has not demonstrated causation, in that the record is devoid of any facts that permit the conclusion that Plaintiff's injuries would have been avoided if Defendants supervised their security staff differently. Therefore, summary judgment will be granted on this claim.

### C. Negligent Training

As with the negligent supervision claim, in order to establish a prima facie case for negligent training, Plaintiff must prove facts sufficient to sustain a claim of negligence. In this case, those elements would be that (1) Defendants owed a duty to Plaintiff to properly train their employees; (2) Defendants breached that duty; (3) Defendants' breach of the duty to appropriately train their employees proximately caused Plaintiff's injury; and (4) Defendants' breach caused actual damages to Plaintiff. Stroby v. Egg Harbor Twp., 754 F. Supp. 2d 716, 721 (D.N.J. 2010); see also Weinberg v. Dinger, 106 N.J. 469, 484 (1987).

In the present case, Plaintiff has not set forth evidence from which a reasonable jury could conclude that Defendants were negligent in their training of Brummett. Plaintiff's only argument with respect to training is taken from Brummett's deposition, where he testified that the only training he recalled receiving at Dusk was "mock hold training." Brummett Dep. 24. This is insufficient to satisfy the second and third elements of a negligence claim. First, although based upon Brummett's deposition, the extent of his training may have been rather limited, Plaintiff has not presented any evidence that Defendants' training was improper, or that any specific shortcoming existed in Dusk's training program. Plaintiff has not provided any further details about Dusk's training policy, or pointed to aspects that he finds improper. Nor has he produced any expert testimony about how security guards or bouncers should be trained. See Brijall v. Harrah's Atlantic City, 905 F. Supp. 2d 617, 621 (D.N.J. 2012) (granting summary judgment on a negligent training claim related to an altercation with a casino security guard, where the plaintiff provided no details about the defendant's training policy, pointed to no aspects he found deficient, and set forth no expert testimony about proper training methods).

Second, while the Court assumes for the purposes of this motion that Plaintiff's injury was caused by an altercation with Defendants' employees, Plaintiff has not presented any evidence that the Brummett's training or lack thereof was a factor in bringing about that altercation. Plaintiff has thus failed to show that the alleged negligent training of Defendants' employees was the proximate cause of Plaintiff's injury. Proximate causation is a concept that is vague and subject to interpretation. Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996). Courts have traditionally defined proximate cause as "any cause in which the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Id. at 418. In a negligent training

case, to establish causation a plaintiff must prove that his or her injury would not have happened "but for" a defendant's negligence in training its employees, and that improper training was a substantial factor in bringing about a plaintiff's injury. Stroby, 754 F. Supp. 2d at 721. Here, Plaintiff has produced no evidence tending to demonstrate that his injury would not have occurred but for negligent training by Dusk, or that the failure to properly train Brummett was a substantial factor that brought about his injuries. While he argues that Brummett should have received more training, he points to nothing specific that would have prevented Plaintiff's injury from occurring.

Without evidence in the record substantiating the claim that Defendant improperly trained or failed to train its employees and that such failure was a substantial factor causing Plaintiff's injuries, summary judgment must be granted on the negligent training claim.

### D. Respondeat Superior Claims

In their motion brief, Defendants only set forth arguments on the negligence claims in Count V against the moving Defendants, and not as to the assault and negligence claims against Brummett in Counts VI and VII, pursuant to which Plaintiff seeks to hold Defendants liable under the doctrine of respondeat superior. Although Plaintiff briefed this issue in his brief opposing summary judgment, and Defendants set forth arguments in response in their reply brief, the Court will decline to consider this issue.[3] See U.S. v. Boggi, 74 F.3d 470, 478 (3d Cir. 1996) (appeals court would not consider arguments raised in a reply brief so that appellees are not

---

[3] The arguments set forth in Defendants' reply brief as to respondeat superior center around the theory that Brummett would have been acting outside the scope of his employment if Plaintiff's allegations about his actions are to be believed. No arguments about the scope of employment were set forth in the moving brief. With respect to Defendants Veloric and Red Stripe, Defendants argue that all claims against them should be dismissed because neither had an employer/employee relationship with Brummett. The reply brief sets forth arguments related to the corporate structure of the parties. It indicates that AC Nightlife is an LLC that has two members, one of which is Red Stripe. In turn, Veloric is the sole member of Red Stripe, which is also an LLC. None of these arguments were set forth in the moving brief. The only arguments in the moving brief discussed the Defendants' lack of direct negligence, which is relevant only to the negligent hiring, training, and supervision claims.

prejudiced by the lack of opportunity to respond); Stern v. Halligan, 158 F.3d 729, 731 n.3 (3d Cir. 1998) ("A party cannot raise issues for the first time in a reply brief"); D'alessandro v. Bugler Tobacco Co., Civ. No. 05-5051, 2007 WL 130798 (D.N.J. Jan. 12, 2007) (stating that a moving party may not raise new issues in a reply brief because "[n]o sur-reply is permitted, so the opponent has no opportunity to address the new defense")

However, as Plaintiff indicates in his opposition brief that he concedes that Caesars did not employ Brummett, and he does not oppose a grant of summary judgment in favor of that defendant, the Court will grant summary judgment for Caesars as to all claims against it.[4] See Pl. Opp'n at 7-8.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment will be **GRANTED IN PART**.  Summary judgment will be granted in full for Defendant Caesars Palace, and summary judgment will be granted for all Defendants on the negligence claims in Count V of the Amended Complaint.  An accompanying Order shall issue today.


Dated:  3/13/2014                                                       /s/ Robert B. Kugler
                                                                        ROBERT B. KUGLER
                                                                        United States District Judge

---

[4] Evidently, Dusk is a tenant in Caesars Atlantic City Casino Hotel, which is the extent of Caesars' involvement in this matter.  SUMF ¶ 5.